avoided and reversed, and this suit is dismissed at the cost of plaintiff and appellee in both courts.

═══════

(108 So. 114)

No. 27615.

## LINDSEY v. MIXONS' HEIRS.

(March 29, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Partition** ⊗➞77(3)—**That family meeting to consider partition sale of land belonging to minor heirs was not called for a fixed date, and notice thereof served on members three days in advance of that date, held immaterial (Civ. Code, art. 285).**

That family meeting to consider partition sale of land belonging to minor heirs was not called for a fixed date, and notice thereof was not served on members three days in advance of that date, *held* immaterial, in view of Civ. Code, art. 285, unless meeting was not held by consent of members composing it and of the undertutor.

2. **Partition** ⊗➞77(3)—**Failure to follow strict procedure in calling family meeting to consider partition sale of land belonging to minor heirs held immaterial, where proceedings were regularly homologated by final judgment.**

That family meeting to consider partition sale of land belonging to minor heirs was not called for a fixed date, and notice thereof was not served on members three days in advance of that date, *held* immaterial, where proceedings of family meeting were regularly homologated by final judgment.

3. **Judicial sales** ⊗➞53—**Property or rights acquired by innocent third persons, acting on faith of final decree of court of competent jurisdiction, ordinarily cannot be disturbed.**

Property or rights acquired by innocent third persons, acting upon faith of a final decree of court of competent jurisdiction, cannot be disturbed except in extreme cases and to right a manifest wrong.

4. **Partition** ⊗➞77(3)—**District judge, appointing more than five members of family meeting to consider partition sale of minors' land is not required to enforce compliance with his order beyond requirements of law (Civ. Code, art. 281).**

Though district judge may not appoint less than five persons as members of a family meet-ing, as required by Civ. Code, art. 281, he may appoint any number in excess of five, but, if he does so, he has a discretion whether to enforce compliance with his order beyond requirements of the law.

5. **Partition** ⊗➞77(3)—**Proceedings of family meeting held properly homologated, and judgment authorizing private sale of lands to effect partition held binding on minors.**

Where court, in default of relatives, appointed seven friends of minors as members of family meeting and it was not contended that any of appointees were ineligible to serve, and five of appointees assembled, took formal oath, and performed all duties required, *held* that proceedings were properly homologated, and hence judgment authorizing private sales of lands for purpose of effecting partition was binding on minors.

Appeal from Second Judicial District Court, Parish of Webster; John S. Richardson, Judge.

Suit by S. H. Lindsey against the heirs of J. M. & Mrs. Pinkie Mixon, deceased. Judgment for plaintiff, and defendant J. T. Mixon and others appeal. Affirmed.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellants.

Thigpen, Herold, Lee & Cousin, of Shreveport, for appellee.

BRUNOT, J. This suit was brought as an action in jactitation for slander of title.

The petition alleges that plaintiff owns 40 acres of land, more or less, in Webster parish, state of Louisiana, described as the northwest quarter of the northwest quarter of section 22, township 21 north, range 10 west; that seven named defendants, the children and heirs of J. M. and Mrs. Pinkie Mixon, both deceased, are slandering petitioner's title to said property by claiming to be the owners of a part thereof. After service of the petition, all of the defendants except J. T. Mixon, Maxine Mixon, and Ida B. Mixon, filed a disclaimer or renunciation of any interest in the property and passed out of the case.

Maxine Mixon and Ida B. Mixon are minors, who appear herein through their tutor, and J. T. Mixon, a minor, who, prior to the filing of the suit, was emancipated by a judgment of the Second judicial district court of Louisiana, answered the petition, and in their answer converted the suit into a petitory action in which S. H. Lindsey, E. A. Crawford, B H. Lindsey, P. F. O'Brien, R. J. O'Brien, J. C. Sherman, Bernard B. Jones, T. C. Hibbler, and the Invincible Oil Company are made defendants.

There was filed with the answer an agreed statement of facts, in which all parties to the suit admit that S. H. Lindsey is the owner of seven-tenths interest in the property; that the Invincible Oil Company has a valid lease on the property; that E. A. Crawford and B. E. Lindsey acquired the property by respective deeds of record; that each of said owners was in actual possession of it during the tenure of his ownership; and that the other defendants in the petitory action have an interest in the minerals, oil, and gas, in and under the property. These admissions have simplified the suit by eliminating all of the defendants in the petitory action except S. H. Lindsey, the plaintiff in the action in jactitation, and by confining the issues in the case to the asserted claims of J. T. Mixon, Maxine Mixon, and Ida B. Mixon, to a one-tenth interest each in the property.

The case was submitted on the agreed statement of facts, which appears in the transcript, pages 15, 16, 17, 18, and 19; and, from a judgment recognizing the validity of S. H. Lindsey's title to the property and rejecting the asserted claims of J. T. Mixon, Maxine Mixon, and Ida B. Mixon to any interest therein, the parties cast appealed.

The admitted facts are that the property involved in the suit was acquired by J. M. Mixon from the Bodcaw Lumber Company on April 9, 1901; that J. M. Mixon and his wife, Pinkie Mixon, died intestate prior to

1913, leaving as their sole heirs ten children, five of whom were minors, and an estate consisting, in part, of the property in dispute; that on February 7, 1914, W. C. Fulbright was appointed and qualified as tutor, and J. F. McInnis as undertutor, for the minors; that, on the same date, the said tutor, on behalf of the minors, filed a petition in the proper court, praying that a family meeting be convoked to deliberate and advise respecting a private sale of all lands belonging to the successions of J. M. and Mrs. Pinkie Mixon for the purpose of effecting a partition thereof among the heirs; that, on March 16, 1914, pursuant to the recommendations of the family meeting and the homologation of the proceedings thereof, a private sale of the land involved in this suit was made to E. A. Crawford by a recorded deed executed by all of the major heirs, in proper person, and by W. C. Fulbright, tutor, for the minor heirs; that B. E. Lindsey acquired the same property from E. A. Crawford on June 18, 1915; that S. H. Lindsey acquired said property from B. E. Lindsey on February 14, 1917; and that, since the purchase of the property by E. A. Crawford, it has been in the actual physical possession, first, of E. A. Crawford, then of B. E. Lindsey, during the time each had title thereto, and since then in the possession of S. H. Lindsey, the vendee of B. E. Lindsey.

There are no disputed facts in the case. Only questions of law are presented for our decision.

The petition of W. C. Fulbright, tutor to the minor heirs of J. M. and Mrs. Pinkie Mixon, deceased, which was filed February 7, 1914, and in which the tutor prayed that a family meeting be convoked to deliberate upon the wisdom or necessity for a private sale of the lands belonging to the successions of J. M. and Mrs. Pinkie Mixon, for the purpose of effecting a partition of their estates among the heirs, and the subsequent proceed-

ings which resulted in the homologation of the procès verbal of the family meeting, are made a part of the record in this case by reference only. The validity of this family meeting is attacked by the plaintiffs in the petitory action herein, and this attack is the basis of their asserted claims to an interest in the property.

It appears from the record that, when the aforesaid petition of W. C. Fulbright, tutor, was filed, the court, in default of relatives, appointed seven friends of the minors as members of the family meeting, and, on February 10, 1914, the court ordered the issuance of a commission to Frank Colbert, a notary public, to hold the family meeting. The notary convoked the family meeting on the same day, with five of the seven friends appointed in the court's order as members thereof, present; and the family meeting as thus composed proceeded to deliberate and advise the court. The proceedings of the family meeting were regularly homologated, and thereafter the property involved in this suit was sold by the major heirs and the tutor representing the minors, to E. A. Crawford.

It is contended that the notary should have called the family meeting for a fixed day, and that the seven friends of the minors who were appointed by the court should have been given three days' previous notice thereof, that the proceedings of the family meeting were therefore premature, unlawful, and ultra vires, and that the judgment homologating the proceedings thereof, and the sale of the property of the succession by the tutor of the minors thereunder, are null and void.

[1] There is no intimation of fraud in the record. On the contrary, there is an entire absence of any showing of injury to the minors. The sole complaint made relates to the omission of alleged sacramental formalities by the notary public preceding the homol-

ogation of the proceedings of the family meeting and the sale of the property. The record does not affirmatively show that any of the requisite formalities were omitted. It shows that the family meeting was composed of five members only; that it was held on the same day the commission was issued; that the undertutor was present and approved the recommendations of the family meeting; and that the proceedings of the family meeting were immediately homologated by the judgment of the court. It does not show that the persons appointed by the court to compose the family meeting were not notified or did not consent to an early meeting. The mere fact that the meeting was not called for a fixed date, and notice thereof was not served upon the members three days in advance of that date, is of no consequence, unless it is made to appear that the meeting was not held by the consent of the members composing it and of the undertutor. Article 285, C. C., concludes as follows:

"The family meeting may be held at an earlier day by consent of the members composing it and the undertutor."

[2, 3] Moreover, the proceedings of the family meeting were regularly homologated by a final judgment of the court. Property or rights acquired by innocent third persons acting upon the faith of a final decree of a court of competent jurisdiction cannot be disturbed except in extreme cases and to right a manifest wrong.

[4] The district judge must appoint not less than five persons as members of a family meeting. He may appoint any number in excess of five, but, if he does so, there is no law which requires him to enforce compliance with his order beyond the requirements of the law. The matter is one of discretion only, that he may or may not enforce at his will.

This court has held in several cases that, in the absence of allegations of fraud, a pur-

chaser, in good faith, is not required to look beyond the decree of the court to ascertain if all the formalities of law have been complied with. Lalanne's Heirs v. Moreau, 13 La. 431; Ball's Administration v. Ball et al., 15 La. 173; Dauterive v. Shaw et al., 17 So. 845, 47 La. Ann. 882; Byrnes v. Byrnes, Minors, et al., 38 So. 991, 115 La. 275.

Section 7 of title 8 of the Civil Code treats of family meetings. Article 281 of the Code reads:

"Family meetings, in all cases in which they are required by law, for the interest of minors or of other persons, must be composed of at least five relations, or in default of relations, friends of him on whose interest they are called upon to deliberate. These relations or friends must be selected from among those domiciliated in the parish in which the meeting is held, or in a neighboring parish provided they do not reside at a distance exceeding thirty miles."

It is not contended in this suit that any of the court's appointees were ineligible to serve as members of the family meeting, and it is shown that five of the appointees assembled, took the formal oath, sat in the meeting, and performed all of the duties required of them by law. In the recently decided case of Norton v. Enos, 104 So. 194, 158 La. 423, this court said:

"From the foregoing, it appears that the judge may appoint as few as five persons to compose a family meeting. As he had such power when he named the members to compose the family meeting in the present instance, we see no reason why, when the procés verbal of that meeting was presented to him for homologation, showing that the meeting was held with only five members, when he had appointed seven, he did not have power to homologate the proceedings of the meeting thus held, if he saw proper to do so. In our opinion, he acted within his powers, and his action was therefore legal. This ruling, in our view, is not in conflict with the Succession of Carbajal, 36 So. 41, 111 La. 953, cited by defendant."

[5] Our conclusion is that the trial judge did not exceed his powers in homologating the proceedings of the family meeting held February 10, 1914, and that the judgment of that date, authorizing the private sale of the lands belonging to the succession of J. M. and Mrs. Pinkie Mixon, deceased, for the purpose of effecting a partition among the heirs, is valid and binding upon their minor children. As this conclusion disposes of the case, we need not consider the other issues raised, all of which are incidental to and dependent upon the nullity of that judgment.

For these reasons, we find that the judgment appealed from is correct, and it is therefore affirmed, at appellants' cost.

O'NIELL, C. J., concurs in the decree, for the reason that, by approving recommendations of the family meeting, the judge approved of its having been composed of only five instead of seven members, as effectively as if he had appointed only five instead of seven members.